Billy B. WILLIAMS, Appellant,

v.

SOUTHERN TRUST & MORTGAGE COMPANY et al., Appellees.

No. 5561.

Court of Civil Appeals of Texas, Waco.

April 22, 1976.

Rehearing Denied May 27, 1976.

Andress, Woodgate & Lodewick, Dallas, for appellant.

Payne & Spradley, Carrington, Coleman, Sloman, Johnson & Blumenthal, Dallas, for appellees.

## OPINION

McDONALD, Chief Justice.

This is an appeal by plaintiff (and cross defendant) Williams from summary judgment: 1) he take nothing in his suit against defendants Southern Trust and Mortgage Company, H. R. Bright and Bright & Schiff (Southern's Stockholders); and 2) sustaining defendants' counterclaim requiring Williams to return stock in Arlin Corporation upon tender into court of $387.73 by defendants.

Plaintiff Williams sued defendants Southern (and its stockholders H. R. Bright and Bright and Schiff) in 1971 alleging that in September 1964 he entered an agreement to work for Southern as Vice President for a stipulated salary, and defendants "granted plaintiff an irrevocable option to purchase * * * 3½% of the stock of Southern at book value [as of] September 1964," and "further agreed that [when] plaintiff * * * terminated his employment with Southern, defendants would repurchase such stock at its book value * * * at time of plaintiff's termination"; that plaintiff was employed by Southern until May 1970; that plaintiff during employment repeatedly requested defendants to issue to him written confirmation of the stock option agreement; that defendants continued to confirm such agreement; that when defendant terminated he requested defendants to honor the stock option agreement by paying plaintiff the book value as of May 1970 less the book value as of September 1964; that defendants refused to honor such contract to plaintiff's damage of $250,000.00.

In the alternative, plaintiff plead defendants falsely and fraudulently deceived him; that the representations as to the stock option were false and known to be false and defendants did not intend to honor same; that over the years defendants continued to deceive plaintiff by confirming the stock option commitment when not intending to honor same; that plaintiff believed and relied on such representations and agreements, which were false; that but for same would not have gone to work for Southern; that plaintiff has been damaged $350,000.00; and that defendants false representations were made wilfully with intent to injure plaintiff, for which plaintiff seeks exemplary damages.

Defendants filed answer; and cross action alleging Williams had been sold 40 shares of stock in the Arlin Company; that he had granted Southern an option on such stock in writing; and that Southern exercised such option and tendered the price of same, and prayed judgment for decree requiring performance of such option agreement.

Plaintiff by supplemental petition plead that defendants had agreed he should have stock in a companion real estate operation; that there would be no repurchase option; that contrary to such agreement, and with-

out consideration, defendants required him to execute the option for defendants to repurchase, and prayed defendants take nothing by their cross action.

Defendants thereafter moved for summary judgment that plaintiff has no binding contract for the stock option; that such claim is barred by the Statute of Frauds and the 2 and 4 year Statutes of Limitations; that defendants' cross action for exercise of the option for defendants to repurchase the Arlin Stock is evidenced by plaintiff's written agreement to re-sell and should be enforced.

The trial court granted such motion and rendered summary judgment plaintiff take nothing on his suit; that the plaintiff return the Arlin stock to defendants (upon their tender of book value of $387.73).

Plaintiff appeals on one point: "The trial court erred in granting the motion for summary judgment."

The record consists of the pleadings, the depositions of Williams and Bright, certain exhibits, and the affidavit of minor Miller an employee of Southern.

We revert to that part of the summary judgment that decreed plaintiff take nothing.

Plaintiff plead defendants breached an agreement to let him purchase stock in Southern at book value as a part of his going to work for Southern as a Vice President.

Alternatively plaintiff plead defendants' representations to let him buy stock in Southern were made without intent to honor same, were fraudulent; and made with intent to deceive plaintiff.

Plaintiff had discussions with Bright about going to work for Southern. Salary, moving expenses, business expenses and duties were agreed on prior to the time of employment. Williams wanted an option to buy stock in Southern so that if the business prospered, and the stock went up, he would have capital gains for his efforts. Bright wrote the following memoranda and delivered a copy to plaintiff:

"We propose to inaugurate a program (within a few months after we have reformed our management team) whereby the top 4 of the management group will share in a program which will provide them with an opportunity to acquire an option at the then book value on their portion of a total of 15% of the capital stock of Southern Trust and Mortgage Company. There will be an option granted to Southern to * * * to repurchase the stock from each of the individuals at the book value existing at the time of their retirement or termination. As discussed, this will permit participation in the growth and profit of the organization of those 4 of the management group participating. I have not yet worked out the details of this program but it is intended that the net effect as outlined above be accomplished."

Williams suggested some revision of the memoranda, but Bright would not agree. Williams then resigned from his job and went to work for Southern on December 15, 1964. He testified he accepted the proposal as contained in the memoranda. Bright testified Williams was one of the "top four" mentioned in the memoranda, and recognized Williams was to receive not less than 3% of the stock; Williams wanted 4%; and Bright wanted "to think about this." In Arlin, the subsidiary real estate corporation which was organized, Williams received 4% of the stock.

Defendants assert the record conclusively establishes there was no contract because no agreement had been reached on who was to participate (besides plaintiff), what percentage of the stock each should receive, and on what date the book value was to be determined. Defendants further assert plaintiff's cause barred by the Statute of Frauds, by limitations, and because even under the memoranda Southern had an "option" to repurchase, but did not have to do so.

█ Summary judgment should be affirmed only if the summary judgment proof establishes a right thereto as a matter of law. Here movants for summary judgment

did not carry such burden. *Gibbs v. Gen. Mtrs. Corp.,* Tex., 450 S.W.2d 827; *Torres v. Western Cas. & Surety Co.,* Tex., 457 S.W.2d 50; *United Distb. Co. of Tex., Inc. v. Riggs Prop, Inc.,* CCA (Waco, Tex.Civ. App.) NWH, 496 S.W.2d 719; *Farley v. Prudential Ins. Co.,* Tex., 480 S.W.2d 176; *E & E Enterprises, Inc. v. Caston,* CCA (Waco, Tex.Civ.App.) NWH, 501 S.W.2d 445; *Hebert v. Continental Land Cp,* CCA (Waco, Tex.Civ.App.) NWH, 513 S.W.2d 948.

■ Defendants did not meet or negate plaintiff case as plead on the issue of contract for the stock option; and did not meet or negate plaintiff's alternative plea of fraud. Fact issues were raised as to whether plaintiff had a contract with defendants for the stock option, and upon whether defendants were guilty of fraud. Defendants did not establish as a matter of law that the Statutes of Fraud and limitation barred plaintiff's claim. While the memoranda gave Southern an option to repurchase, if it did not do so, Williams owned the stock and could sell it at its market value. The burden of proof was on movants and all doubts are resolved against them.

■ The existence of fraud is a question of fact for the trier of facts, *Drinkard v. Ingram,* 21 Tex. 650; *Graham v. Roder,* S.Ct., 5 Tex. 141; *De Leon v. White,* S.Ct., 9 Tex. 598; *Farnsworth v. Dolch,* CCA (Waco, Tex.Civ.App.) NRE, 488 S.W.2d 531; *Bates v. First National Bank of Waco,* CCA (Waco, Tex.Civ.App.) NWH, 502 S.W.2d 181.

■ The summary judgment further sustained defendants' counterclaim against Williams, and required him to return the Arlin stock to defendants upon their tender into Court of $387.73.

Bright wrote the following memoranda: "We propose to commence a companion real estate operation for acquisition and development of property * * * which activity will be participated in by the top four of the management group on the same basis (15% allocated to the top four of the management group on a basis as agreed between themselves with directors approval). There will be no repurchase option against stock ownership or property interest acquired under this set up."

Bright testified that a companion real estate operation was commenced known as Arlin Development Company, and 4% of the stock was allocated to plaintiff. Before the stock was issued, M. J. Green, President of Southern required plaintiff to sign a repurchase agreement by Southern at book value at time of termination. Plaintiff signed because he had been cautioned by Bright not to let Green know the terms of the Bright-Williams agreement.

Defendants did not establish their entitlement to summary judgment on the cross action as a matter of law.

Plaintiff did not have to establish that defendants were not entitled to summary judgment; but rather defendants had to establish their entitlement to summary judgment as a matter of law. This they did not do.

Plaintiff's point is sustained.